United States District Court
Southern District of Texas

**ENTERED**

November 05, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT COLEMAN, §
§
Plaintiff, §
§ CIVIL ACTION NO. H-21-1977
v. § (CRIMINAL NO. H-18-689)
§
UNITED STATES OF AMERICA, §
§
Defendant. §

## MEMORANDUM OPINION and ORDER

Plaintiff, Robert Coleman (BOP #61382-479) ("Plaintiff"), has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Plaintiff's § 2255 Motion") (Docket Entry No. 63), asserting that his guilty plea "was entered as a result of ineffective assistance [of counsel] and is therefore neither knowing or voluntary."[1] The Government has filed United States' Motion for Summary Judgment (the "Government's MSJ") (Docket Entry No. 69), arguing that there is no genuine dispute as to any material fact and the Government is entitled to judgment as a matter of law.[2] For reasons explained below, Plaintiff's § 2255 Motion will be denied, and the Government's MSJ will be granted.

---

[1]Plaintiff's § 2255 Motion, Docket Entry No. 63, p. 31. All docket entry numbers refer to Criminal No. H-18-689. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2]Government's MSJ, Docket Entry No. 69, p. 1.

## I.  __Factual Background__

In May of 2018 Houston Police Department ("HPD") investigators used a cooperating source to set up a cocaine deal with Plaintiff.[3] Investigators observed the source purchase 28 grams of cocaine from Plaintiff.[4]  On August 6, 2018, the Honorable Keith Ellison issued an order authorizing wire and electronic intercepts for a phone used by Plaintiff.[5]  Judge Ellison renewed the authorization on September 10, 2018.[6]  The interceptions revealed that Plaintiff sold gram quantities of cocaine, crack cocaine, marijuana, and pills to various customers on a regular basis and that Plaintiff was resupplied regularly from several sources.[7]  Agents also learned from multiple sources and interceptions that Plaintiff cooked crack cocaine in his residence.[8]

On November 6, 2018, Plaintiff was arrested pursuant to an arrest warrant.[9]  After officers knocked and announced, Plaintiff fired a round towards the front door, and the bullet lodged in the door.[10]  The gun jammed and was found next to Plaintiff when he was

---

[3]Plea Agreement, Docket Entry No. 19, p. 6 ¶ 11.

[4]<u>Id.</u>

[5]<u>Id.</u>

[6]<u>Id.</u>

[7]<u>Id.</u>

[8]<u>Id.</u> at 7.

[9]<u>Id.</u>

[10]<u>Id.</u>

arrested.[11]  Plaintiff stated that he believed someone was breaking into the apartment, and that he did not know that the people he was firing at were law enforcement.[12]  Approximately 9.1 grams of crack cocaine and equipment to manufacture crack cocaine were seized from Plaintiff's residence.[13]  Plaintiff's girlfriend, who was present at his arrest, told agents that Plaintiff manufactured and sold crack cocaine and that the gun he fired was his.[14]

On April 9, 2019, Plaintiff pleaded guilty to (1) Manufacture/Possession with Intent to Deliver a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and (2) Discharging a Firearm During and in relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii).[15]  After Plaintiff swore to tell the truth, the following colloquy took place:

THE COURT:  Mr. Coleman, before I can accept your plea, I must ask you a number of questions.  It is very important that you listen carefully to all of my questions and that you answer all of my questions truthfully and completely for several reasons.

First, since you are now under oath, if you gave an untrue answer to a question, you could be charged with a separate crime of perjury.

Do you understand that?

---

[11]Id.

[12]Id.

[13]Id.

[14]Id.

[15]Id. at 1 ¶ 1.

DEFENDANT:        Yes, sir.

THE COURT:        Also, before I can accept your plea, I must make a number of findings.  My findings are based on your answers to my questions.  In order for my findings to be correct, it is therefore necessary that all of your answers to my questions be truthful and complete.

                  Do you understand that?

DEFENDANT:        Yes, sir.

THE COURT:        If you do not understand anything that I say this morning, would you agree to stop and ask me to repeat or explain anything that you do not understand?

DEFENDANT:        Yes, sir.

THE COURT:        Also, you may stop at any time and speak with your lawyer.  You do not need anyone's permission to speak with him.

Rearraignment Transcript, Docket Entry No. 53, page 3, line 14

through page 4, line 13.

                          .  .  .  .

THE COURT:        Have you ever been diagnosed or treated for any type of mental problem?

DEFENDANT:        No, sir.

THE COURT:        Have you ever been diagnosed or treated for addiction to drugs or alcohol?

DEFENDANT:        No, sir.

THE COURT:        Has anyone ever told you that you should be treated for any type of mental problem, or for any type of addiction?

DEFENDANT:        No, sir.

THE COURT:        Have you taken any type of drug or medicine within the last 24 hours?

DEFENDANT:        Yes, sir.  My blood pressure.

THE COURT:        Does that medicine prevent you from understanding what's happening?

DEFENDANT:        No, sir.

<u>Id.</u> at page 5, line 11 through page 6, line 2.

                              . . . .

THE COURT:        How many times have you talked with your lawyer about this case?

DEFENDANT:        Numerous times.

THE COURT:        More than five?

DEFENDANT:        About five times.

THE COURT:        Has your lawyer talked to you about the charges against you and what the government would have to prove to establish your guilt?

DEFENDANT:        Yes, sir.

THE COURT:        Has he reviewed with you the evidence that the government has against you?

DEFENDANT:        Yes, sir.

THE COURT:        Has your lawyer discussed with you how the Federal Advisory Sentencing Guidelines might apply in your case?

DEFENDANT:        Yes, sir.

THE COURT:        Has your lawyer answered all of your questions?

DEFENDANT:        Yes, sir.

THE COURT:        Has he done everything that you have asked him to do?

DEFENDANT:        Yes, sir.

THE COURT:        Are you fully satisfied with the advice and counsel that your lawyer has provided to you?

DEFENDANT:        Yes, sir.

-5-

THE COURT:      You do not have to plead guilty.  You have a right
                to go to trial.  If you went to trial, you would
                have the right to the assistance of a lawyer at all
                stages of the trial.  If you could not afford a
                lawyer, the Court could appoint a lawyer for you.
                You would have the right to see and hear the
                government's witnesses at trial and have your
                lawyer question them.  You would have the right to
                compel other people to come into court and provide
                evidence for you.  You would not be required to
                testify at a trial, and you could not be convicted
                at a trial unless the jury unanimously found beyond
                a reasonable doubt that you were guilty.

                If you plead guilty today, however, there will not
                be a trial, and you will give up the right to a
                trial and all the protections that are associated
                with a trial.

                Do you understand that?

DEFENDANT:      Yes, sir.

THE COURT:      The maximum sentence that you face as to Count 1 is
                20 years in prison, and a fine of $1 million, and 3
                years of supervised release, and a one-hundred
                dollar special assessment.

                As to Count 2, you face the sentence of at least
                ten years in prison, and a maximum sentence of life
                in prison, and a fine of $250,000, and up to five
                years of supervised release and a one-hundred
                dollar special assessment.

                Do you understand that?

DEFENDANT:      Yes, sir.

THE COURT:      There's no parole in federal court.  That means
                you'll actually have to serve your sentence in
                prison.

                In addition, because you're pleading guilty to a
                felony, you'll give up the right to vote, hold
                public office, serve on a jury, and possess a
                firearm.

                Any term of supervised release will be subject to a
                number of conditions which will be monitored by a

probation officer.  If I find that you violated those conditions, I could revoke your supervised release and send you back to prison without any credit for the time you had already served on supervised release.

Do you understand that?

DEFENDANT:    Yes, sir.

THE COURT:    The Court has not made any decision about what [your] sentence will be.  If I accept your guilty plea, a probation officer will interview you, investigate the facts of the case, and prepare a presentence investigation report.  You will have an opportunity to read the report and to discuss the report with your lawyer before your sentencing.

You or the government may file objections to the presentence report.  At the time of your sentencing, I will rule on any objections, and I will then determine your advisory guideline range and your sentence.

What you need to understand today is that this process of determining your sentence has not yet begun.  That means no one knows what advisory guideline range the probation officer will recommend, or what advisory guideline range the Court will find applicable, or what sentence I will impose.

Do you understand?

DEFENDANT:    Yes, sir.

THE COURT:    If the sentence that I impose is greater than the sentence that you now expect, or greater than the sentence that your lawyer or anyone else may have predicted, you will be bound by your guilty plea today, regardless of your sentence.  You will not be allowed to change your mind and withdraw your guilty plea because you are not satisfied with your sentence.

Do you understand that?

DEFENDANT:    Yes, sir.

THE COURT:        The government has provided the Court with a copy
                  of the plea agreement.   Have you read the
                  agreement?

DEFENDANT:        Yes, sir.

THE COURT:        When did you read it?

DEFENDANT:        Last -- this weekend.

THE COURT:        Pardon me?

DEFENDANT:        This weekend.

THE COURT:        Have you talked to your lawyer about it?

DEFENDANT:        Yes, sir.

THE COURT:        How much time did you spend talking to your lawyer
                  about the agreement?

DEFENDANT:        Almost an hour.

THE COURT:        Did he answer any questions you had about it?

DEFENDANT:        Yes, sir.

THE COURT:        All right.   I want to go over the essential parts
                  of it again just to be sure you understand them.
                  Do you have a copy of the agreement in front of
                  you?

MR. WILLIAMS:     We do, Your Honor.

THE COURT:        All right.    If you'll please look at [the]
                  agreement, Mr. Coleman.

                  In Paragraph 1, you agree to plead guilty to Counts
                  1 and 2, which I described earlier.

                  Paragraph 6, on Page 3, the government agrees to
                  dismiss Count 3 at the time of your sentencing.
                  And the government also agrees to move for an
                  additional one-level downward adjustment in your
                  offense level because you're pleading guilty.

                  Now, other than the factual basis for your plea,
                  which I will discuss in a minute, have I correctly
                  described your plea agreement with the government
                  as you understand the agreement?

-8-

DEFENDANT:      Yes, sir.

THE COURT:      Other than what is stated in this agreement, has the government made any promises to you in connection with your guilty plea?

DEFENDANT:      No, sir.

THE COURT:      Has anyone threatened you or forced you to plead guilty?

DEFENDANT:      No, sir.

THE COURT:      Has the government told you what sentence you will receive if you plead guilty?

DEFENDANT:      No, sir.

THE COURT:      Has your lawyer told you what sentence you will receive if you plead guilty?

DEFENDANT:      No, sir.

THE COURT:      Has anyone else told you what sentence you will receive if you plead guilty?

DEFENDANT:      No, sir.

THE COURT:      In order for the government to prove your guilt as to Count 1, the government would have to show that you knowingly possessed a controlled substance with the intent to distribute it.  That means to transfer possession of it to someone else.  And that the controlled substance in this case was cocaine base.

As to Count 2, the government would have to show that you committed the elements of Count 1, a drug trafficking crime, and that during and in relation to that crime, you knowingly discharged the firearm, and that you discharged the firearm during in relation to and in furtherance of the defendant's drug trafficking crime.

Now, if you'll turn, please, to Page 6 of your plea agreement.

Paragraph 11 says, "Defendant is pleading guilty because he is in fact guilty of the charges

contained in Counts 1 and 2 of the indictment.  If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.

The following facts, among others, would be offered to establish the defendant's guilt.

And then on Page 6, in the first half of Page 7, the government sets out the facts it says it could prove if the case were tried.  Mr. Coleman, have you carefully read Pages 6 and 7 of the plea agreement?

DEFENDANT:       Yes, sir.

THE COURT:       Are all the facts stated on those pages true?

DEFENDANT:       Yes, Your Honor.  Yes, sir.

THE COURT:       Did you do everything described in those pages?

DEFENDANT:       Yes, sir.

THE COURT:       Now, on November 6, 2018, were you home in your apartment?

DEFENDANT:       Yes, sir.

THE COURT:       Did somebody knock on the door?

DEFENDANT:       No, sir.

THE COURT:       Nobody knocked on the door?  Well, why were you shooting at the door?

DEFENDANT:       Glass windows was broken.  Windows was broken.

THE COURT:       Tell me what happened on that day.

DEFENDANT:       Okay.  That day of the arrest, I was asleep, some windows was broken, my girlfriend brother jumped up and said that somebody was breaking in the house or whatever.  So at that time, I grabbed the gun, whenever, just trying to figure out what was going on.  And at that time when I made it to the front area, which is the living room, I let off a shot on the floor or whatever, and it must have ricocheted.  And around that time, I left, and after I left the

                         room, I went to the room, and then the door bust
                         open and the police came in.

THE COURT:      You had a gun[,] right?

DEFENDANT:      Yes, sir.

THE COURT:      What type of gun did you have?

DEFENDANT:      It was a 9 millimeter.

THE COURT:      Where did you keep the gun?

DEFENDANT:      In the closet.

THE COURT:      All right.  Did you have drugs in the apartment?

DEFENDANT:      Yes, sir.

THE COURT:      Had you been selling drugs?

DEFENDANT:      Yes, sir.

THE COURT:      Why did you have a gun?

DEFENDANT:      The gun was for where I lived at for my protection
                where I lived at in the area, it's like a whole
                bunch of violence and stuff going on.

THE COURT:      Well, did you have the gun to protect your drugs
                and the money for the drugs?

DEFENDANT:      No, sir.  I wasn't like selling drugs like on a
                regular to protect.  I didn't have the gun --

THE COURT:      How can I accept the plea to Count -- he says the
                gun didn't have anything to do with the drugs.  You
                drafted this.  How does this prove the essential
                elements of felon in possession of a firearm in
                relation to a drug trafficking crime[?]  We have to
                go to trial on that.

MS. BASILE:     Okay.  Your Honor, he was possessing the gun to
                protect the drugs.  We have a wiretap, we have him
                with the guns, multiple occasions selling drugs
                with a gun --

THE COURT:      I can't accept his plea.  So when is this case set
                for trial?

                                -11-

MR. WILLIAMS:   I think Monday, Judge.  I think we had a pretrial conference set yesterday.

THE COURT:   Do you understand the problem, I can't let him stand there --

MR. WILLIAMS:   I understand.

THE COURT:   -- and say he didn't -- the gun didn't have anything to do with the drugs.

MR. WILLIAMS:   I clearly understand.

THE COURT:   Okay. Now, you're set for trial Monday; is that right?

Mr. WILLIAMS:   I think it is.  I think it was set for Monday.

CASE MANAGER:   I believe it's in May.

THE COURT:   You need some time to talk to him?

MR. WILLIAMS:   Yes, sir, Your Honor, obviously.

THE COURT:   Okay.  We'll take a short recess and I'll come back in about five minutes.

Id. at page 6, line 6 through page 16, line 9.

The colloquy resumed after a brief recess:

MR. WILLIAMS:   May we approach again, Your Honor?

THE COURT:   Sure.  Where are we, Mr. Williams?

MR. WILLIAMS:   I've counseled with Mr. Coleman regarding where we are, and it's still a little confusing to me.  I would like for him to state on the record as to what it is because I wasn't there.  We agreed to the particular facts, but now we're saying something else, but I want it clear from -- to the Court as to what he did, and I'd like him to articulate that in order to have a factual basis to support the plea, Judge.

THE COURT:   All right.  Go ahead, Mr. Coleman.  Speak up so we can hear you.

DEFENDANT:      Okay, sir.  Your Honor, the question -- can I have the question again?

THE COURT:      Well, in order for you to plead guilty to Count 2, you must have knowingly discharged the firearm. You've admitted that.  But then discharging of the firearm must have been during and in relation to, or in furtherance of the drug trafficking crime.

Now, you've admitted there were drugs on the premises, and you've admitted, at least the factual basis says that approximately 9.1 grams of crack cocaine and equipment to manufacture cocaine were seized.  But the problem is -- and your plea agreement says that your girlfriend told the agents that "Coleman manufacture[]s and sells crack cocaine, and that the gun he fired was his," but you've denied that the gun had anything to do with the drugs.

So as to that count, I can't find you guilty.  The plea agreement says in return for the government's promise, you're supposed to plead guilty to both counts.  I can't discuss plea negotiations, but I'm not sure I can accept your plea to Count 1 either, but that's between the lawyers.

Do you understand where I'm coming from?

DEFENDANT:      Yes, sir.

THE COURT:      So why did you have the gun in the apartment?

DEFENDANT:      To protect the drugs.

THE COURT:      You're telling me that under oath?

DEFENDANT:      Yes, sir, I am.

THE COURT:      The gun was to protect the drugs?

DEFENDANT:      Yes, sir.

THE COURT:      All right.  How do you plead to Counts 1 and 2, guilty or not guilty?

DEFENDANT:      Guilty.

THE COURT:      Do you think any other advice of rights is required before I accept your client's plea?

-13-

MR. WILLIAMS:   No, Your Honor.  We've discussed this in detail. I've gone over several wiretaps, certain other evidence, other statements of witnesses regarding this particular offense.

In my opinion, there were no defenses as to this particular matter, and he expressed a desire to plead guilty.  It became new to me this morning as to the misunderstanding as to what's in the factual basis, but I wanted to be clear for the Court.

THE COURT:   Just to be sure again, how do you plead to Counts 1 and 2, guilty or not guilty?

DEFENDANT:   Guilty.

THE COURT:   All right.  You may now sign the agreement.

It is the finding of the Court that the defendant is fully competent and capable of entering an informed plea, and that the plea of guilty is a knowing and voluntar[]y plea supported by an independent basis in fact establishing each of the essential elements of the offense.

I therefore accept your plea.  I now adjudge you guilty.

Id. at page 16, line 11 through page 19, line 9.

Plaintiff, his attorney, and the Government's attorney signed the plea agreement.[16]  Plaintiff also signed an addendum to the plea agreement that read in part:

My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.  I have read and carefully reviewed every part of this plea agreement with my attorney.  I understand this agreement and I voluntarily agree to its terms.

Plea Agreement, Docket Entry No. 19, p. 12.

---

[16]Plea Agreement, Docket Entry No. 19, p. 11.

-14-

Plaintiff's sentencing hearing took place before the court on July 11, 2019.[17]  Plaintiff informed the court that he had read and discussed the presentence investigation report with his attorney.[18] The probation officer calculated Plaintiff's total offense level to be 21, combined with a criminal history score of V, establishing a "guideline imprisonment range [of] 70 to 87 months[.]"[19]  The PSR also noted that this calculation did not include the 10-year mandatory minimum term of imprisonment required under Count 2 -- discharging a firearm during and in relation to a drug trafficking crime.[20]

Paragraphs three, four, and five of the PSR described HPD investigators' observations of Plaintiff's relevant conduct from May of 2018 through October of 2018.[21]  This included a description of Plaintiff's sale of 28 grams of cocaine to an HPD source in May of 2018[22] and other drug sales that Plaintiff conducted in conversations recorded by HPD wire intercepts.[23]  Plaintiff objected to the inclusion of these paragraphs in the PSR and argued that his sentence for the drug offense should be based only on the 9.1 grams

---

[17]Sentencing Transcript, Docket Entry No. 45, p. 1.

[18]Id. at page 2, lines 16-21.

[19]Presentence Investigation Report (the "PSR"), Docket Entry No. 26, p. 14 ¶ 61.

[20]Id. ¶¶ 60-61.

[21]Id. at 4-5 ¶¶ 3-5.

[22]Id. at 4 ¶ 4.

[23]Id. ¶ 5.

of cocaine that he possessed at the time of his arrest instead of the 37.1 grams contemplated by the probation officer.[24] The court rejected those arguments[25] and moved forward with Plaintiff's advisory guideline range.[26]   Plaintiff stated "I accept full responsibility for what I have done" and said that he "discharged the weapon in fear, just trying to figure out was somebody trying to break in."[27]   The court found that "a guideline sentence is appropriate"[28] and sentenced Plaintiff to "70 months in custody on Count 1 to be followed by 120 months in custody on Count 2 for a total custodial sentence of 190 months."[29]

On direct appeal, Plaintiff argued that

> the court erred in determining his advisory Sentencing Guidelines sentencing range for Count 1 because, applying Guideline § 1B1.3 (relevant conduct), it included in his relevant conduct 28 grams of cocaine base he sold to a cooperating source in May 2018, rather than considering only the drugs involved in his November 2018 offense of conviction.

United States v. Coleman, 813 F. App'x 167, 168 (5th Cir. 2020).

The Fifth Circuit rejected this argument, holding that "in a drug distribution case, quantities and types of drugs not specified

---

[24]Addendum to the Presentence Report ("PSR Addendum"), Docket Entry No. 27, p. 1; PSR, Docket Entry No. 26, p. 6 ¶ 9.

[25]Sentencing Transcript, Docket Entry No. 45, page 3, lines 6-9.

[26]Id. at page 3, line 24 through page 4, line 3.

[27]Id. at page 4, lines 11-12 and 22-23.

[28]Id. at page 8, line 1.

[29]Id. lines 8-10.

in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." <u>Id.</u> (citing U.S.S.G. § 1B1.3, cmt. background).  The Fifth Circuit held that "[c]ontrary to Coleman's contentions, the court's finding the May 2018 sale satisfied Guideline § 1B1.3 was plausible in the light of the record." <u>Id.</u>  On November 20, 2020, the Supreme Court of the United States denied Plaintiff's petition for a writ of certiorari.  <u>Coleman v. United States,</u> 141 S. Ct. 832 (2020).

On June 9, 2021, Plaintiff filed his § 2255 Motion asserting that his plea "was not Knowingly, Intelligently and Voluntarily Entered as a Result of Ineffective Assistance of Counsel[.]"[30] Plaintiff alleges that his defense counsel provided him with "a gross misrepresentation of the likely sentencing consequences of accepting the Government's formal plea offer" with respect to the drug count,[31] and that defense counsel "was deficient for coercing [him] into pleading guilty to the firearm count."[32]

The Government filed its motion for summary judgment on July 28, 2021,[33] and Plaintiff filed his *Pro Se* Reply in Opposition to the United States' Response and Motion for Judgment on the

---

[30]Plaintiff's § 2255 Motion, Docket Entry No. 63, p. 18.

[31]<u>Id.</u> at 19.

[32]<u>Id.</u> at 23.

[33]Government's MSJ, Docket Entry No. 69.

Record ("Plaintiff's Reply") (Docket Entry No. 72) on September 23, 2021.

## II.  <u>Standard of Review</u>

### A.  Standard for § 2255 Motions

A prisoner serving a sentence imposed by a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

> When facts are at issue in a § 2255 proceeding, a hearing is required if (1) the record, as supplemented by the trial court's personal knowledge or recollection, does not conclusively negate the facts alleged in support of the claim for § 2255 relief, and (2) the movant would be entitled to postconviction relief as a legal matter if his factual allegations are true.

<u>United States v. Anderson,</u> 832 F. App'x 284, 287 (5th Cir. 2020) (citing <u>Friedman v. United States,</u> 588 F.2d 1010, 1014-15 (5th Cir. 1979)).

A prisoner seeking relief under 28 U.S.C. § 2255 "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. <u>United States v. Frady,</u> 102 S. Ct. 1584, 1593

(1982).  After a defendant has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that [he] stands fairly and finally convicted." United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted).  For this reason, review of convictions under § 2255 is limited to "questions of constitutional or jurisdictional magnitude," United States v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012), or claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  See Massaro v. United States, 123 S. Ct. 1690, 1694–96 (2003).

To prevail on an ineffective-assistance claim, a defendant must show that (1) counsel's performance was deficient, and (2) that he was prejudiced as the result of counsel's deficient performance.  Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).  To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id.  This is a "highly deferential" inquiry in which "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 2065, 2066.  Under this standard, courts must "presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010) (citing Strickland, 104 S. Ct. at 2065).  To overcome

this presumption, a defendant must identify acts or omissions of counsel that were not the result of reasonable professional judgment. Strickland, 104 S. Ct. at 2066.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. In the guilty plea context, the prejudice component is not satisfied unless a defendant shows that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S. Ct. 366, 370 (1985). This inquiry "focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." Lee v. United States, 137 S. Ct. 1958, 1966 (2017). "When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, [courts] do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea[,]" but "instead consider whether the defendant was prejudiced by the denial of the entire judicial proceeding to which he had a right." Id. at 1965 (internal quotations, citations, and alterations omitted). The court still considers whether a defendant had any viable defenses because "[w]here a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the

Government offers one." Id. at 1966; see also Young v. Spinner, 873 F.3d 282, 287 (5th Cir. 2017) (finding that overwhelming evidence against a defendant "made his acquittal, and ability to show prejudice, exceedingly unlikely.").

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee, 137 S. Ct. at 1967. Factors relevant to determining whether a defendant would have gone to trial can also include "the risks [he] would have faced at trial," "his 'representations about his desire to retract his plea,'" and "the district court's admonishments." United States v. Batamula, 823 F.3d 237, 240 n.4 (5th Cir. 2016) (quoting United States v. Kayode, 777 F.3d 719, 725 (5th Cir. 2014)).

A pro se litigant's pleadings are reviewed under "less stringent standards than formal pleadings drafted by lawyers . . . ." Haines v. Kerner, 92 S. Ct. 594, 596 (1972). "At the same time, however, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993) (internal quotations and citation omitted).

## B. Standard for Summary Judgment

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

-22-

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## III.   Analysis

### A.   The Drug Count

Plaintiff claims that counsel "assured [him] that he was [only] being charged with the 9.1 grams of cocaine base found at the residence where [he] was arrested" and that Plaintiff thus expected that he "would be facing an advisory guidelines range of 30-37 months' imprisonment for the drug count."[34] However, because the court considered Plaintiff's prior relevant conduct, including Plaintiff's sale of 28 grams of cocaine to HPD investigators in May of 2018, Plaintiff's guideline range was 70-87 months.[35] The court sentenced Plaintiff to 70 months' imprisonment on the drug count.[36] Plaintiff asserts that he "only pleaded guilty to the drug count as

---

[34]Plaintiff's § 2255 Motion, Docket Entry No. 63, pp. 19-20.

[35]Sentencing Transcript, Docket Entry No. 45, page 3, line 6 through page 4, line 2.

[36]Id. at page 8, lines 8-9.

-23-

a result of counsel's misadvice which convinced him that by accepting the plea offer his sentence exposure on that count would be limited to the 9.1 grams of cocaine base found at the residence where [he] was arrested."[37]

"When a defendant pleads guilty on the advice of counsel, the attorney has the duty to advise the defendant of the available options and possible consequences." Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir. 1981); see also United States v. Herrera, 412 F.3d 577, 580 (5th Cir. 2005) ("One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty.  An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea."). "As long as the defendant understood the length of time he might possibly receive, he was fully aware of his plea's consequences." United States v. Jones, 905 F.2d 867, 868 (5th Cir. 1990) (internal quotations, citations, and alterations omitted); see also United States v. Cardenas, 531 F. App'x 530, 530-31 (5th Cir. 2013) ("Because Cardenas was aware of the maximum sentence he faced, his alleged mistaken belief that his sentence would not be enhanced based on his relevant conduct did not render his plea involuntary.").

In United States v. Valdez, 973 F.3d 396, 403 (5th Cir. 2020), the Fifth Circuit held that a defense counsel's performance was not

---

[37]Plaintiff's § 2255 Motion, Docket Entry No. 63, p. 27.

unreasonably deficient simply because counsel "underestimated" the
defendant's Guidelines range.   The court's holding was based
largely on the fact that defense counsel "did advise [the
defendant] of the 10-year statutory maximum, which of course he was
earlier advised of in open court at his arraignment." <u>Id.</u>   The
court also noted that "<u>post-Booker,</u> the application of the
Guidelines to a sentence is discretionary, and the court is
entitled to impose a variance outside the Guidelines range." <u>Id.</u>
at 404.   The court found that the defendant had been "properly
apprised" of the consequences of pleading guilty and that he knew
that "no estimation [counsel] offered was a guarantee or a
promise." <u>Id.</u> The court concluded that "[i]t is no doubt that
counsel's estimated sentencing range was far lower than [the
defendant's] actual sentence.   Nevertheless, we do not find any
deficiency in counsel's estimation to be unreasonable." <u>Id.</u>

        Plaintiff argues that "the terms of the plea agreement itself
put counsel on notice that [Plaintiff's] sentence would be impacted
by relevant conduct"[38] because the Plea Agreement contained details
about Plaintiff's relevant conduct.   Defense counsel objected to
the court's consideration of that relevant conduct during the
sentencing phase.[39]   Although the court rejected counsel's
arguments, Plaintiff does not allege, and nothing in the record

_____

        [38]Plaintiff's § 2255 Motion, Docket Entry No. 63, p. 21.

        [39]PSR Addendum, Docket Entry No. 27, p. 1; PSR, Docket Entry
No. 26, pp. 4-5 ¶¶ 3-5.

suggests, that counsel made the arguments in bad faith or without a reasonable basis for believing they would succeed.

Moreover, Plaintiff understood the consequences of pleading guilty.  The court explained at his rearraignment that Plaintiff faced a maximum sentence of twenty years in prison for Count One.[40] Plaintiff stated under oath that he understood.[41]  Plaintiff further stated that no one, including his lawyer, had told him what sentence he would receive if he pleaded guilty.[42]  The court told Plaintiff that "this process of determining your sentence has not yet begun.  That means no one knows what advisory guideline range the probation officer will recommend, or what advisory guideline range the Court will find applicable, or what sentence I will impose."[43]  Plaintiff stated under oath that he understood this.[44]

Plaintiff was "properly apprised" of the consequences of pleading guilty and knew that "no estimation [counsel] offered was a guarantee or a promise."  Valdez, 973 F.3d at 403.  Because Plaintiff was fully aware of the consequences of his guilty plea, see Jones, 905 F.2d at 868, the court concludes that counsel fulfilled his duty and was not deficient.  See Wainwright, 639 F.2d at 267.  Counsel's estimated sentencing range may have been lower

---

[40]Rearraignment Transcript, Docket Entry No. 53, page 7, lines 24-25.

[41]Id. at page 8, lines 8-9.

[42]Id. at page 11, lines 20-25 and page 12, lines 1-3.

[43]Id. at page 9, lines 10-15.

[44]Id. lines 16-17.

than the sentence Plaintiff actually received, but the court "do[es] not find any deficiency in counsel's estimation to be unreasonable." See Valdez, 973 F.3d at 403.

Moreover, Plaintiff cannot show that he was prejudiced by counsel's alleged inaccurate prediction. Based on the information Plaintiff had about his possible sentence and the overwhelming evidence against him, the court concludes that there is no "reasonable probability that, but for counsel's [alleged] errors, [Plaintiff] would not have pleaded guilty and would have insisted on going to trial." Hill, 106 S. Ct. at 370. The court will not "upset a plea solely because of [Plaintiff's] post hoc assertions . . . about how he would have pleaded differently but for his attorney's deficiencies." See Lee, 137 S. Ct. at 1967.

The court concludes that Plaintiff knowingly, voluntarily, and intelligently entered his plea on Count One, and that Plaintiff has failed to show ineffective assistance of counsel as to that plea. Accordingly, Plaintiff's § 2255 Motion as to Count One is **DENIED**. There being no genuine dispute as to any material fact necessary for the resolution of this question, the court will grant the Government's MSJ as to Plaintiff's guilty plea to Count One of the indictment.

**B.   The Gun Count**

Plaintiff argues that his counsel "was deficient for coercing [him] into pleading guilty to the firearm count."[45]   Plaintiff

_____

[45]Plaintiff's § 2255 Motion, Docket Entry No. 63, p. 23.

asserts that during his rearraignment hearing, he "truthful[ly] explained that he did not possess the firearm in connection with drug trafficking, but rather for protection due to the dangers present in the surrounding community."[46]  After Plaintiff asserted in court that he did not possess the gun in connection with the drug crime, the court called a recess.[47]  When Plaintiff returned to the courtroom, he stated under oath that he possessed the gun "[t]o protect the drugs."[48]  The court asked Plaintiff whether anyone had threatened him or forced him to plead guilty, and Plaintiff said no.[49]  Plaintiff also executed a written plea agreement, which read in part that Plaintiff "acknowledges that no threats have been made against him [] and that he [] is pleading guilty freely and voluntarily because he [] is guilty."[50]

"Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." Blackledge v. Allison, 97 S. Ct. 1621, 1629 (1977).  "[A]n unambiguous plea agreement . . . is accorded great evidentiary weight."  United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994);

---

[46]Id.

[47]Rearraignment Transcript, Docket Entry No. 53, page 14, line 20 through page 16, line 10.

[48]Id. at page 17, line 24 through page 18, line 7.

[49]Id. at page 11, lines 17-19.

[50]Plea Agreement, Docket Entry No. 19, p. 10 ¶ 22.

see also Hobbs v. Blackburn, 752 F.2d 1079, 1081 (5th Cir. 1985) ("Official records, such as this signed document, are entitled to a presumption of regularity and are accorded great evidentiary weight.").

Plaintiff asserts that "[d]uring . . . recess, [counsel] told me to say that I fired the weapon to protect the 9.1 grams of cocaine base found at the residence where I was arrested."[51] In a sworn declaration, Plaintiff asserts: "I did not want to say what [counsel] told me to because that was not what happened. But, I was afraid and [counsel] told me that doing so was in my best interest."[52]

To establish coercion Plaintiff "must show that the fear of a greater penalty destroyed his ability to weigh rationally, with aid of counsel, the advantages of proceeding to trial against those of pleading guilty . . . ." Garner v. Scott, 59 F.3d 1242, at *1 (5th Cir. 1995) (citing Jones v. Estelle, 584 F.2d 687, 690 (5th Cir. 1978)). Plaintiff alleges no facts that would establish coercion. Plaintiff does not allege "actual or threatened physical harm, promises to cease improper harassment, or bribes. Neither has he shown mental coercion that overcame his free will." See Estelle, 584 F.2d at 689-90 (citing Brady v. United States, 90

---

[51]Declaration of Robert Coleman in Support of Motion to Vacate, Set Aside or Correct a Federal Sentence or Conviction Pursuant to 28 U.S.C. § 2255 ("Plaintiff's Declaration"), attached to Plaintiff's § 2255 Motion, Docket Entry No. 63-1, p. 3 ¶ 4.

[52]Id.

S. Ct. 1463, 1470 (1970)).  Plaintiff alleges that he "was afraid" and that his counsel told him that pleading guilty to the gun charge was in his best interest,[53] but he says nothing specific about the manner in which counsel made this recommendation, and nothing in his pleadings or in the record suggests that counsel exerted undue pressure.  Even if counsel made his recommendation urgently or impatiently -- something Plaintiff has not alleged -- a defense attorney's "impatience and stern demand for a quick answer," when added to the threat of a harsh sentence if the case goes to trial, does not amount to coercion.  See Estelle, 584 F.2d at 690.  "[A] plea is not involuntary solely because a defendant pleads guilty out of a desire to limit the possible penalty." Id. (citing North Carolina v. Alford, 91 S. Ct. 160, 164 (1970)).

The court concludes that the files and records of the case conclusively show that Plaintiff is entitled to no relief, and therefore no evidentiary hearing is necessary.  See 28 U.S.C. § 2255(b); Anderson, 832 F. App'x at 287.  Even if the court accepts all the facts alleged in Plaintiff's Declaration as true, Plaintiff has not stated a plausible claim to relief under 28 U.S.C. § 2255.  Therefore, Plaintiff's § 2255 Motion will be denied, and the Government's MSJ will be granted.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of

---

[53] Id.

appealability when it enters a final order adverse to the
applicant." A certificate of appealability will not issue unless
the applicant makes "a substantial showing of the denial of a
constitutional right," 28 U.S.C. § 2253(c)(2), which requires an
applicant to demonstrate that "'reasonable jurists would find the
district court's assessment of the constitutional claims debatable
or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004)
(quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). This
requires a petitioner to show that "jurists of reason could
disagree with the district court's resolution of his constitutional
claims or . . . could conclude the issues presented are adequate
to deserve encouragement to proceed further." Buck v. Davis, 137
S. Ct. 759, 773 (2017) (internal quotations and citation omitted).

A district court may deny a certificate of appealability
sua sponte without requiring further briefing or argument. See
Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After
careful review of the pleadings, the arguments of the parties, and
the applicable law, the court concludes that reasonable jurists
could not find the assessment of the constitutional claims
debatable or wrong. Because Plaintiff does not allege facts
showing that his claims could be resolved in a different manner, a
certificate of appealability will be denied.

## V.   Conclusion and Order

For the reasons explained above, the court concludes that
Plaintiff has not stated a plausible claim to relief under 28

-31-

U.S.C. § 2255, and the Government is entitled to judgment as a matter of law. Accordingly, Plaintiff's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 63) is **DENIED**; the United States' Motion for Summary Judgment (Docket Entry No. 69) is **GRANTED**; and this action will be dismissed with prejudice.

A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 5th day of November, 2021.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-32-